Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/16/2022 08:05 AM CST

John Doe, appellant, v.
State of Nebraska et al., appellees.
___ N.W.2d ___

Filed October 21, 2022.    No. S-21-472.

1. **Tort Claims Act: Appeal and Error.** Whether a complaint alleges a cause of action under the State Tort Claims Act, or alleges a claim which is precluded by an exemption under the State Tort Claims Act, presents a question of law.
2. **Jurisdiction.** Subject matter jurisdiction is a question of law. When a jurisdictional question does not involve a factual dispute, the issue is a matter of law.
3. **Judgments: Appeal and Error.** An appellate court reviews questions of law independently of the lower court's conclusion.
4. **Jurisdiction: Immunity: Appeal and Error.** A state's sovereign immunity from suit is a matter of subject matter jurisdiction that an appellate court cannot ignore.
5. **Jurisdiction.** Whether a court has subject matter jurisdiction is a threshold issue that should be resolved prior to an examination of the merits.
6. **Negligence: Liability: Public Officers and Employees.** A state is not liable to a person injured by the negligence of its employees, unless there is a statute or constitutional provision permitting recovery.
7. **Constitutional Law: Legislature: Immunity: Waiver.** Nebraska's Constitution provides that "[t]he state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." But this constitutional provision is not self-executing, and it requires legislative action to waive the State's sovereign immunity.
8. **Jurisdiction: Legislature: Immunity: Waiver.** Absent legislative action waiving sovereign immunity, a trial court lacks subject matter jurisdiction over an action against the State.
9. **Statutes: Immunity: Waiver.** A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such

overwhelming implication from the text as will allow no other reasonable construction.

10. ____: ____: ____. Statutes purporting to waive the protection of sovereign immunity are to be strictly construed in favor of the sovereign and against waiver.

11. **Tort Claims Act: Legislature: Immunity: Waiver.** Through the State Tort Claims Act, the Legislature has waived the State's sovereign immunity with respect to some, but not all, types of tort claims.

12. **Tort Claims Act: Immunity: Waiver.** The definition of "tort claim" in Neb. Rev. Stat. § 81-8,210(4) (Reissue 2014) fundamentally limits the type of tort claims that are subject to the State Tort Claims Act's limited waiver of immunity.

13. **Tort Claims Act: Legislature: Immunity: Waiver.** Under Neb. Rev. Stat. § 81-8,210(4) (Reissue 2014), the Legislature has waived the State's sovereign immunity for those tort claims that (1) seek money damages only; (2) are on account of property damage, personal injury, or death; (3) are caused by the negligent or wrongful act or omission of a state employee acting within the scope of his or her office or employment; and (4) occur under circumstances in which a private person would be liable to the claimant.

14. **Tort Claims Act: Immunity: Waiver: Liability.** Under the plain language of Neb. Rev. Stat. §§ 81-8,210(4) and 81-8,215 (Reissue 2014), the State Tort Claims Act's limited waiver of sovereign immunity applies only to tort claims for which a private person, under like circumstances, would be liable in tort to the plaintiff.

15. **Tort Claims Act: Jurisdiction: Motions to Dismiss.** Plaintiffs bringing an action under the State Tort Claims Act must plausibly allege a "tort claim" as that term is defined under the act, both to survive a motion to dismiss for failure to state a claim and to establish subject matter jurisdiction.

16. **Tort Claims Act: Negligence: Proof.** A negligence action brought under the State Tort Claims Act has the same elements as a negligence action brought against a private individual—a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages.

17. **Tort Claims Act: Jurisdiction: Negligence: Liability: Proof.** To establish subject matter jurisdiction under the State Tort Claims Act, a plaintiff must plausibly allege a "tort claim" as defined under the act. That requires, inter alia, plausibly alleging that the State, if a private person, would be liable to the plaintiff for the negligent or wrongful act or omission under like circumstances.

18. **Statutes: Legislature: Intent: Torts: Liability.** A court may determine that a statute gives rise to a tort duty to act in the manner required by the statute where (1) the statute is enacted to protect a class of persons which includes the plaintiff, (2) the statute is intended to prevent the particular injury that has been suffered, and (3) the statute is intended by the Legislature to create a private liability as distinguished from one of a public character.

19. **Statutes: Legislature: Torts: Liability: Courts.** Where the Legislature has not by its express terms or by implication provided for civil tort liability for failure to comply with a statute, under principles of judicial restraint, it is prudent that courts not do so.

20. **Statutes: Legislature: Intent: Torts: Courts.** When considering whether a statute gives rise to a tort duty, courts should consider the express remedy, if any, imposed for violating the statute, and whether such a remedy is inconsistent with a purported legislative intention to create a tort duty.

21. **Statutes: Torts: Liability.** Neb. Rev. Stat. § 29-3523 (Cum. Supp. 2020) does not give rise to a legal duty that would subject a private person to civil tort liability for failing to act in the manner prescribed by statute.

22. **Negligence.** Nebraska does not recognize a common-law duty not to disclose sealed criminal history information.

23. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Lancaster County: Kevin R. McManaman, Judge. Affirmed.

Zachary W. Lutz-Priefert and John A. McWilliams, of Gross & Welch, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and James A. Campbell, Solicitor General, for appellees.

Kevin Ruser and Ryan P. Sullivan, of University of Nebraska Civil Clinical Law Program, and Deena Keilany and Alicia Christensen, Senior Certified Law Students, for amicus curiae Nebraska College of Law Civil Clinic.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

STACY, J.

Relying exclusively on the State Tort Claims Act (STCA),[1] John Doe filed suit against the State of Nebraska, the Nebraska State Patrol (NSP), the Nebraska Department of Correctional Services (DCS), and DCS director Scott Frakes, alleging they negligently disclosed and reviewed his sealed criminal history record information in violation of Neb. Rev. Stat. § 29-3523 (Cum. Supp. 2020). The district court dismissed the action on a number of grounds, including that Doe's claim was barred by the doctrine of sovereign immunity. Doe appealed, and we granted the appellees' petition to bypass the Nebraska Court of Appeals.

We affirm the dismissal of Doe's tort action on sovereign immunity grounds, but our reasoning differs somewhat from that of the district court. We conclude that Doe has not alleged a tort claim as that term is defined in the STCA, and the State has therefore not waived its sovereign immunity with respect to Doe's claim.

## I. BACKGROUND

Because this case was dismissed at the pleading stage, the facts recited below are taken from the allegations of Doe's complaint and the attachments thereto. Doe was convicted of a felony in 2000, and a few years later, he was convicted of a misdemeanor. Sometime thereafter, Doe applied for pardons. In 2016, the Nebraska Board of Pardons granted his application and issued pardons for both convictions.

After receiving the pardons, Doe filed a motion asking the sentencing court to seal his criminal history record information pursuant to § 29-3523(5). The court granted Doe's motion and sealed the criminal history record information relating to both of his pardoned convictions. Because Doe's negligence claim is premised on alleged violations of § 29-3523, we provide

---

[1] Neb. Rev. Stat. §§ 81-8,209 to 81-8,235 (Reissue 2014 & Cum. Supp. 2020).

a brief overview of that statute now and address the relevant statutory text in more detail later in our analysis.

Section 29-3523 authorizes a court to order the sealing of criminal history record information under certain circumstances, and it is part of the Security, Privacy, and Dissemination of Criminal History Information Act (Criminal History Act).[2] As relevant here, that act imposes certain obligations on "[c]riminal justice agenc[ies]"[3] once "[c]riminal history record information"[4] has been ordered sealed pursuant to § 29-3523. Ordinarily, criminal history records are considered public records.[5] But in 2019, the Legislature amended § 29-3523 to provide that once a court has ordered criminal history records to be sealed, they "are not part of the public record and shall not be disseminated to persons other than criminal justice agencies,"[6] except in certain limited circumstances. Moreover, § 29-3523 instructs that when responding to a public inquiry about criminal history records which have been sealed, a criminal justice agency "shall respond . . . in the same manner as if there were no criminal history record information and criminal history record information shall not be disseminated to any person other than a criminal justice agency."[7] The statute also provides that in "any application for employment . . . a person cannot be questioned with respect to any offense for which the record is sealed"[8] and

---

[2] See Neb. Rev. Stat. §29-3501 (Reissue 2016) (providing that Neb. Rev. Stat. §§ 29-209, 29-210, 29-3501 to 29-3528, and 81-1423 (Reissue 2016 & Cum. Supp. 2020) "shall be known and may be cited as the Security, Privacy, and Dissemination of Criminal History Information Act").

[3] See § 29-3509.

[4] See § 29-3506.

[5] See § 29-3520.

[6] § 29-3523(7).

[7] § 29-3523(1).

[8] § 29-3523(8).

that if such an inquiry is made, the applicant may "respond as if the offense never occurred."[9]

### 1. Doe Applies for Job With DCS

In September 2019, Doe applied for a job as a caseworker at DCS. A question on the application form asked whether Doe had a criminal history, and Doe responded, "[N]o." DCS interviewed Doe for the position, and thereafter, it requested a criminal history background check as part of the application process. According to the allegations of the complaint, NSP wrongfully provided DCS with criminal history record information that included Doe's sealed records. Doe was subsequently advised by DCS that he was not being hired for the caseworker position due to his criminal history.

### 2. Doe Files Suit

In July 2020, Doe filed this negligence action in the district court for Lancaster County against the State of Nebraska, NSP, DCS, Frakes, and "Unknown Employees of the State of Nebraska." The district court permitted Doe to file the complaint using a pseudonym, and he proceeds likewise on appeal.

The complaint alleged a single cause of action against all named defendants, described as "Negligent Disclosure and Review of Sealed Records in Violation of Neb. Rev. Stat. § 29-3523." Doe alleged that when DCS requested his criminal history records, it was not acting in its capacity as a criminal justice agency, but instead was making a public inquiry into Doe's criminal history. Doe alleged that in response to this public inquiry, NSP "negligently disclosed" his sealed criminal history records to DCS in violation of § 29-3523. He also alleged that DCS' "consideration" of his sealed records was negligent and a violation of § 29-3523. The complaint alleged that this negligence "harmed" Doe and resulted in "lost income,

---

[9] *Id.*

and benefits, including retirement benefits which he would have earned had he been employed by [DCS]." The complaint prayed for monetary damages in an amount to be determined at trial, an injunction prohibiting NSP from disclosing Doe's criminal history records "except where explicitly allowed by statute," and "expungement" of Doe's criminal history records "to prevent future harms and injustices."

Doe did not serve the unknown defendants, and we do not address them further. The remaining defendants were served, and they responded as follows.

DCS and Frakes moved to dismiss Doe's complaint on two grounds: (1) The complaint failed to state a claim upon which relief could be granted, and (2) the claim was barred by sovereign immunity. NSP did not join in the motion to dismiss and instead filed an answer. NSP's answer expressly denied that it had disclosed Doe's criminal history record information to DCS, and it alleged, as affirmative defenses, the same grounds on which the other defendants moved for dismissal.

At the hearing on the motion to dismiss, the parties presented only argument. DCS and Frakes argued that Doe's complaint failed to state a claim because it contained no factual allegations showing they owed Doe a legal duty actionable in tort. Alternatively, they argued that even if a legal duty was owed, the discretionary function exemption to the STCA applied and barred Doe's tort claim. In response, Doe argued that § 29-3523 created an actionable tort duty, and he argued that the discretionary function exemption did not apply to bar his claim because the Criminal History Act prescribed a specific course of conduct that DCS and Frakes were required to follow regarding his sealed records.

### (a) Claims Against DCS and Frakes Dismissed

In December 2020, the district court entered an order dismissing the claims against DCS and Frakes. The court's order recited various grounds for dismissal, but we recount only those pertaining to jurisdiction.

In that regard, the district court determined that Doe's tort claim against DCS and Frakes was essentially one for common-law failure to hire and was barred by the STCA's discretionary function exemption.[10] After dismissing the claims against DCS and Frakes, the court, sua sponte,[11] directed the remaining parties to brief two additional issues bearing on its subject matter jurisdiction: (1) whether Doe pled a "tort claim" as defined under the STCA and (2) whether a violation of § 29-3523 is actionable in tort. The court held a hearing to take up these jurisdictional questions once the briefing was complete.

At the hearing on jurisdiction, the State and NSP argued the court lacked subject matter jurisdiction under the STCA because Doe had not alleged a "[t]ort claim" as defined in § 81-8,210(4). In relevant part, that statute provides:

> Tort claim means any claim against the State of Nebraska for money only on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the state, while acting within the scope of his or her office or employment, under circumstances in which the state, if a private person, would be liable to the claimant for such damage, loss, injury, or death . . . .[12]

The State and NSP argued that Doe had not alleged a "tort claim" as defined under the STCA because (1) his claim was not for money only, (2) he had not alleged a personal injury, and (3) the alleged violation of § 29-3523 was not a claim for which a private person could be liable under similar circumstances. Additionally, the State and NSP argued that under

---

[10] See § 81-8,219(1).

[11] See *Moser v. State*, 307 Neb. 18, 22, 948 N.W.2d 194, 199 (2020) (holding State's waiver of sovereign immunity under STCA is jurisdictional matter that "a court may consider sua sponte").

[12] § 81-8,210(4).

the test articulated in *Claypool v. Hibberd*,[13] § 29-3523 did not create an actionable tort duty which could support a claim for negligence.

Doe disagreed. He argued the complaint sufficiently alleged a plausible "tort claim" under the STCA because it sought money damages, on account of a personal injury, caused by the negligent dissemination and consideration of his sealed criminal history records in violation of § 29-3523. Doe also argued that § 29-3523 created a tort duty which applies to governmental employees and private persons alike. Alternatively, he argued that if the court did not agree § 29-3523 created a tort duty, then it should find that Nebraska recognizes a general common-law duty prohibiting the dissemination and consideration of sealed criminal history records.

### (b) Sua Sponte Dismissal for Lack of Jurisdiction

After considering arguments of the parties, the court entered an order dismissing Doe's complaint, in its entirety, for lack of subject matter jurisdiction. The court recited several reasons why it lacked jurisdiction.

First, the court concluded that Doe had not pled a "tort claim" under the STCA, reasoning primarily that Doe's complaint failed to allege a "personal injury" within the meaning of § 81-8,210(4). Additionally, the court concluded that the Legislature did not create a tort duty when it enacted § 29-3523 of the Criminal History Act, so the alleged violation of that statute did not present a tort claim for which the State had waived immunity under the STCA. The court also rejected Doe's assertion that Nebraska recognized a common-law duty prohibiting the dissemination of truthful information about a person's criminal history. Lastly, the court concluded that to the extent Doe's complaint sought injunctive relief

---

[13] *Claypool v. Hibberd*, 261 Neb. 818, 626 N.W.2d 539 (2001).

and "expungement" of his criminal records, those remedies fell outside the STCA's waiver of sovereign immunity.[14] The court thus determined it lacked subject matter jurisdiction over Doe's claim under the STCA, and it dismissed the complaint in its entirety on that basis.

Doe filed a timely appeal, and we granted the appellees' petition to bypass. After oral argument before this court, we requested supplemental briefing addressing whether, under Nebraska tort law, a private person under like circumstances would be liable to Doe. Supplemental briefs were received and considered, and we discuss the parties' jurisdictional arguments later in our analysis.

## II. ASSIGNMENTS OF ERROR

Doe assigns five errors which we consolidate and restate into two: (1) The district court erred when it determined Doe had not alleged a "tort claim" within the meaning of the STCA and thus dismissed the complaint for lack of subject matter jurisdiction, and (2) the district court erred when it determined the discretionary function exemption applied to bar Doe's claim against DCS and Frakes.

In support of his first assignment of error, Doe presents several arguments. First, he asserts that § 29-3523 of the Criminal History Act created a tort duty to conform to the requirements of the act and that the district court erred in concluding otherwise. Alternatively, he argues Nebraska recognizes a common-law duty to not disseminate or consider sealed criminal history information. Next, he argues the complaint alleged a plausible claim for personal injury, and the district court erred in concluding otherwise. And finally, he argues the district court

---

[14] See *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 285 Neb. 48, 58, 825 N.W.2d 204, 213 (2013) (holding definition of tort claim under STCA is for "'money only'" and thus "exclude[s] nonmonetary claims, such as actions for injunctive relief").

erred in concluding that the remedies of injunctive relief and expungement are barred by sovereign immunity.

## III. STANDARD OF REVIEW

[1] Whether a complaint alleges a cause of action under the STCA, or alleges a claim which is precluded by an exemption under the SCTA, presents a question of law.[15]

[2] Subject matter jurisdiction is a question of law.[16] When a jurisdictional question does not involve a factual dispute, the issue is a matter of law.[17]

[3] An appellate court reviews questions of law independently of the lower court's conclusion.[18]

## IV. ANALYSIS

### 1. Sovereign Immunity and Subject Matter Jurisdiction

[4,5] A state's sovereign immunity from suit is a matter of subject matter jurisdiction that an appellate court cannot ignore.[19] Whether a court has subject matter jurisdiction is a threshold issue that should be resolved prior to an examination of the merits.[20] We therefore begin our analysis by reviewing familiar principles of sovereign immunity which bear on the court's subject matter jurisdiction in this case.

[6-8] Nebraska has long recognized the "'rule that a state is not liable to a person injured by the negligence of its employees, unless there is a statute or constitutional provision

---

[15] See, *Williams v. State*, 310 Neb. 588, 967 N.W.2d 677 (2021); *Brown v. State*, 305 Neb. 111, 939 N.W.2d 354 (2020). Accord *Edwards v. Douglas County*, 308 Neb. 259, 953 N.W.2d 744 (2021) (whether allegations of complaint set forth claims which are precluded by exemptions under Political Subdivisions Tort Claims Act presents question of law).

[16] See *id.*

[17] See *id.*

[18] See *id.*

[19] See *Edwards, supra* note 15.

[20] *Lambert v. Lincoln Public Schools*, 306 Neb. 192, 945 N.W.2d 84 (2020).

permitting recovery.'"[21] Nebraska's Constitution provides that "[t]he state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought."[22] But this constitutional provision is not self-executing, and it requires legislative action to waive the State's sovereign immunity.[23] Absent legislative action waiving sovereign immunity, a trial court lacks subject matter jurisdiction over an action against the State.[24]

[9,10] A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction.[25] Nebraska courts follow the rule that statutes purporting to waive the protection of sovereign immunity are to be strictly construed in favor of the sovereign and against waiver.[26]

Doe's complaint relies exclusively on the STCA for jurisdiction in this case. He alleged no other statutory basis for jurisdiction over his tort claim, and he argued no other statutory basis for jurisdiction before the district court. We thus limit our jurisdictional analysis to the STCA.

### (a) STCA's Limited Waiver
### of Sovereign Immunity

[11] Under the plain language of the STCA, no tort claim "shall be maintained against the state, any state agency, or any employee of the state on any tort claim except to the extent, and only to the extent, provided by the [STCA]."[27] We have

---

[21] See *Jill B. & Travis B. v. State*, 297 Neb. 57, 66, 899 N.W.2d 241, 250 (2017).

[22] Neb. Const. art. V, § 22.

[23] See *Jill B. & Travis B., supra* note 21.

[24] *Burke v. Board of Trustees*, 302 Neb. 494, 924 N.W.2d 304 (2019).

[25] *Edwards, supra* note 15.

[26] *Id.*

[27] § 81-8,209.

recognized that through the STCA, the Legislature has waived the State's sovereign immunity with respect to some, but not all, types of tort claims.[28]

When considering whether a particular tort claim falls within the STCA's limited waiver of sovereign immunity, our reported opinions often focus on the applicability of the statutory exemptions set out in § 81-8,219.[29] This is because when one of those exemptions applies, the tort claim is not one for which the State has consented to be sued.[30] But, as we discuss next, the STCA also contains another, more fundamental, limitation on the waiver of sovereign immunity for tort claims—the statutory definition of "tort claim."

### (i) Definition of "Tort Claim"

For purposes of the STCA, the Legislature has defined "tort claim" in § 81-8,210(4). We quoted the relevant portions of that definition earlier in this opinion, and we repeat it here for convenience:

> Tort claim means any claim against the State of Nebraska for money only on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the state, while acting within the scope of his or her office or employment, *under circumstances in which the state, if a private person, would be liable to the claimant for such damage, loss, injury, or death* . . . .[31]

[12,13] The STCA's definition of "tort claim" fundamentally limits the type of tort claims that are subject to the STCA's limited waiver of sovereign immunity. Under this statutory

---

[28] See, *Williams, supra* note 15; *Moser, supra* note 11; *Brown, supra* note 15.

[29] See, e.g., *Wizinsky v. State*, 308 Neb. 778, 957 N.W.2d 466 (2021) (discretionary function exemption); *Moser, supra* note 11 (analyzing applicability of intentional tort exemption); *Brown, supra* note 15 (recreational activity exemption); *Zawaideh, supra* note 14 (misrepresentation exemption).

[30] See *Edwards, supra* note 15.

[31] § 81-8,210(4) (emphasis supplied).

definition, the Legislature has waived the State's sovereign immunity for those tort claims that (1) seek money damages only; (2) are on account of property damage, personal injury, or death; (3) are caused by the negligent or wrongful act or omission of a state employee acting within the scope of his or her office or employment; and (4) occur under circumstances in which a private person would be liable to the claimant.

On appeal, the appellees argue that the claim alleged in Doe's complaint failed to satisfy any of the definitional requirements for a tort claim under § 81-8,210(4). But we do not address all of the definitional requirements; instead, we focus our analysis on the last requirement, which limits tort claims under the STCA to those torts occurring under circumstances "in which the state, if a private person, would be liable to the claimant."[32] Similar language appears in § 81-8,215 of the STCA, which sets out the general waiver of sovereign immunity and provides that "[i]n all suits brought under the [STCA] the state shall be liable in the same manner and to the same extent as a private individual under like circumstances . . . ." Similar provisions appear in the Political Subdivisions Tort Claims Act.[33] As stated, our settled rules of statutory construction require that we strictly construe these waivers of sovereign immunity in favor of the sovereign.

The "private person" provision in § 81-8,210(4) and the related "private individual" provision in § 81-8,215 have been part of the STCA since its adoption in 1969.[34] This court long ago recognized that through these statutory provisions, the Legislature consented to tort "liability on the part of the State under the same circumstances under which a private person would be liable."[35] Our opinions discussing the STCA routinely

[32] § 81-8,210(4).

[33] See Neb. Rev. Stat. §§ 13-903(4) and 13-908 (Reissue 2012).

[34] See §§ 81-8,210(4) and 81-8,215 (Cum. Supp. 1969).

[35] *Cortes v. State*, 191 Neb. 795, 798, 218 N.W.2d 214, 216 (1974).

recite the "private person" provisions,[36] but we have not previously addressed the jurisdictional import of such provisions on the STCA's waiver of immunity. This case affords an opportunity to develop our case law on this jurisdictional issue.

In their supplemental briefing to this court, the parties agree that under the plain language of §§ 81-8,210(4) and 81-8,215 (Reissue 2014), the Legislature's waiver of the State's sovereign immunity is limited to claims for which a private person under like circumstances would be liable in tort to the claimant under Nebraska law. Both parties point to a dearth of Nebraska case law addressing this aspect of the STCA, and, as a result, they devote considerable discussion to federal cases addressing similar "private person" provisions within the Federal Tort Claims Act (FTCA).[37]

The FTCA provides, in relevant part, that the "United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ."[38] Additionally, § 1346(b)(1) gives the federal district courts

---

[36] See, e.g., *Davis v. State*, 297 Neb. 955, 970, 902 N.W.2d 165, 181 (2017) (reciting both provisions and noting that "the state defendants could not have committed the tortious acts set out in [plaintiff's] complaint as private individuals"). See, also, *Moser, supra* note 11, 307 Neb. at 23, 948 N.W.2d at 199 ("[a]s pertinent here, the STCA waives the State's sovereign immunity for tort claims against the State on account of personal injury caused by the negligent or wrongful act or omission of any employee of the State, while acting within the scope of his or her office or employment, under circumstances in which the State, if a private person, would be liable to the claimant for such injury"); *Northland Ins. Co. v. State*, 242 Neb. 10, 14, 492 N.W.2d 866, 869 (1992) (holding "an action for contribution is covered under [the STCA], but only if a private person would be liable to the claimant for the damage, loss, injury, or death"); *Blitzkie v. State*, 228 Neb. 409, 415, 422 N.W.2d 773, 777 (1988) ("[s]ubject to certain exempted claims, the [STCA] provides for the State's liability for its torts the same as a private person may be liable for torts").

[37] See 28 U.S.C. §§ 1346(b) and 2671 to 2680 (2018).

[38] § 2674.

exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

The U.S. Supreme Court has construed these federal statutory provisions "to mean what they say, namely, that the United States waives sovereign immunity 'under circumstances' where local law would make a '*private person*' liable in tort."[39] The Supreme Court has referred to this as the FTCA's "'private person' standard,"[40] and other federal courts have described it as the "private analogue" requirement of the FTCA.[41] Regardless of nomenclature, federal courts have consistently held that the private person requirement is jurisdictional in nature and must be satisfied for the FTCA's limited waiver of sovereign immunity to apply.[42] As the U.S. Supreme Court succinctly stated recently in *Brownback v. King*,[43] when bringing a claim under the FTCA, "a plaintiff must plausibly allege that 'the United States, if a private person, would be liable to the claimant' under state law both to survive [a

---

[39] *United States v. Olson*, 546 U.S. 43, 44, 126 S. Ct. 510, 163 L. Ed. 2d 306 (2005) (emphasis in original).

[40] *Id.*, 546 U.S. at 46.

[41] See, e.g., *Green Acres Enterprises, Inc. v. U.S.*, 418 F.3d 852, 855 (8th Cir. 2005). See, also, *D.J.C.V. v. United States*, No. 20 Civ. 5747, 2022 WL 1912254 (S.D.N.Y. June 3, 2022).

[42] See, e.g., *Smith v. U.S.*, 14 F.4th 1228 (11th Cir. 2021); *Gutrejman v. U.S.*, 527 F. Supp. 3d 1 (D.C. 2021); *In re Marjory Stoneman Douglas High School*, 482 F. Supp. 3d 1273 (S.D. Fla. 2020); *McGonagle v. U.S.*, 155 F. Supp. 3d 130 (D. Mass. 2016).

[43] *Brownback v. King*, ___ U.S. ___, 141 S. Ct. 740, 749, 209 L. Ed. 2d 33 (2021).

motion to dismiss for failure to state a claim] and to establish subject-matter jurisdiction."

The Nebraska Legislature patterned the STCA after the FTCA,[44] and the "private person" language under the STCA largely mirrors the private person language under the FTCA. Consequently, when discussing the jurisdictional impact of the private person requirement under the STCA, both Doe and the appellees argue in their supplemental briefing that the jurisdictional reasoning of the federal courts, as it pertains to the private person requirement under the FTCA, is instructive. We generally agree, with the caveat that the federal courts do not always adhere to the same rules of strict construction that Nebraska courts follow when considering statutes that purport to waive sovereign immunity.[45]

[14,15] Considering the plain language of §§ 81-8,210(4) and 81-8,215 under our settled rule of strict construction, we now expressly recognize what has been the case since the enactment of the STCA: The STCA's limited waiver of sovereign immunity applies only to tort claims for which a private person, under like circumstances, would be liable in tort to the plaintiff. This means that plaintiffs bringing an action under the STCA must plausibly allege a "tort claim" as that term is defined under the STCA, both to survive a motion to dismiss for failure to state a claim and to establish subject matter jurisdiction.

[16,17] To clarify, it remains true as a general principle that a negligence action brought under the STCA or the Political Subdivisions Tort Claims Act[46] has the same elements as a negligence action brought against a private individual—a

---

[44] See *Jill B. & Travis B., supra* note 21.

[45] See, e.g., *Moser, supra* note 11, 307 Neb. at 29, 948 N.W.2d at 202 (observing that U.S. Supreme Court "has not uniformly used the same strict construction canon with respect to waivers of sovereign immunity" that Nebraska follows).

[46] Neb. Rev. Stat. § 13-901 et seq. (Reissue 2012 & Cum. Supp. 2020).

plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages.[47] However, to establish subject matter jurisdiction under the STCA, a plaintiff must also plausibly allege a "tort claim" as defined under the STCA. That requires, inter alia, plausibly alleging that the State, if a private person, would be liable to the plaintiff for the negligent or wrongful act or omission under like circumstances.

### (ii) Has Doe Alleged Tort Claim Under STCA?

The district court concluded that it lacked subject matter jurisdiction over Doe's action because he had not alleged a "tort claim" as defined under the STCA. On appeal, the parties present arguments going to each of the definitional requirements for a tort claim under § 81-8,210(4). However, because we conclude the "private person" definitional requirement is dispositive, we confine our analysis to that issue and do not reach the parties' other jurisdictional arguments.[48]

### (b) Private Person Analogue

We turn now to the dispositive jurisdictional issue in this STCA appeal: whether Doe has alleged a tort claim for which a private person, under like circumstances, would be liable. In Doe's complaint, all of the negligent or wrongful acts or omissions relate to the defendants' alleged failure to comply with the provisions of § 29-3523. The jurisdictional question under the STCA, then, is whether a private person under like circumstances would be liable in tort for failing to comply with § 29-3523.

In his supplemental briefing, Doe argues that a private person would be liable in tort for disseminating and considering his

---

[47] See, e.g., *Reiber v. County of Gage*, 303 Neb. 325, 928 N.W.2d 916 (2019).

[48] *State v. Webb*, 311 Neb. 694, 974 N.W.2d 317 (2022) (appellate court not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

sealed criminal history records under either of two theories. His primary argument is that § 29-3523 creates a tort duty that applies to private persons. Alternatively, he argues that Nebraska law recognizes a common-law duty to not disclose criminal history records. We address each argument below, but first we recite the relevant text of § 29-3523.

Section 29-3523 provides:

(1) After . . . the granting of a motion [to seal criminal history record information] under subsection (4), (5), or (6) of this section, a criminal justice agency shall respond to a public inquiry in the same manner as if there were no criminal history record information and criminal history record information shall not be disseminated to any person other than a criminal justice agency, except as provided in subsection (2) of this section or when the subject of the record:

(a) Is currently the subject of prosecution or correctional control as the result of a separate arrest;

(b) Is currently an announced candidate for or holder of public office;

(c) Has made a notarized request for the release of such record to a specific person; or

(d) Is kept unidentified, and the record is used for purposes of surveying or summarizing individual or collective law enforcement agency activity or practices, or the dissemination is requested consisting only of release of criminal history record information showing (i) dates of arrests, (ii) reasons for arrests, and (iii) the nature of the dispositions including, but not limited to, reasons for not prosecuting the case or cases.

(2) That part of criminal history record information described in subsection (7) of this section may be disseminated to individuals and agencies for the express purpose of research, evaluative, or statistical activities pursuant to an agreement with a criminal justice agency that specifically authorizes access to the information, limits the use

of the information to research, evaluative, or statistical activities, and ensures the confidentiality and security of the information.

. . . .

(5) Any person who has received a pardon may file a motion with the sentencing court for an order to seal the criminal history record information and any cases related to such charges or conviction. Upon a finding that the person received a pardon, the court shall grant the motion and issue an order as provided in subsection (7) of this section.

. . . .

(7) Upon acquittal or entry of an order dismissing a case described in subdivision (3)(c) of this section, or after granting a motion under subsection (4), (5), or (6) of this section, the court shall:

(a) Order that all records, including any information or other data concerning any proceedings relating to the case, including the arrest, taking into custody, petition, complaint, indictment, information, trial, hearing, adjudication, correctional supervision, dismissal, or other disposition or sentence, are not part of the public record and shall not be disseminated to persons other than criminal justice agencies, except as provided in subsection (1) or (2) of this section;

(b) Send notice of the order (i) to the Nebraska Commission on Law Enforcement and Criminal Justice, (ii) to the Nebraska State Patrol, and (iii) to law enforcement agencies, county attorneys, and city attorneys referenced in the court record;

(c) Order all parties notified under subdivision (7)(b) of this section to seal all records pertaining to the case; and

(d) If the case was transferred from one court to another, send notice of the order to seal the record to the transferring court.

(8) In any application for employment, bonding, license, education, or other right or privilege, any appearance as a witness, or any other public inquiry, a person cannot be questioned with respect to any offense for which the record is sealed. If an inquiry is made in violation of this subsection, the person may respond as if the offense never occurred.

*(i) Does § 29-3523 Create Tort Duty?*

As stated, Doe argues that § 29-3523 of the Criminal History Act creates a tort duty to act in the manner required by the statute, and he argues that such a duty is imposed on governmental employees and private persons alike. The appellees argue that § 29-3523 does not create a tort duty, and in any event, the pertinent requirements of § 29-3523 are not directed at private individuals.

[18] We have not yet had occasion to consider whether § 29-3523 gives rise to a tort duty. But in *Claypool*, we set out the test for determining when a statute creates such a duty:

A court may determine that a statute gives rise to a tort duty to act in the manner required by the statute where [1] the statute is enacted to protect a class of persons which includes the plaintiff, [2] the statute is intended to prevent the particular injury that has been suffered, and [3] the statute is intended by the Legislature to create a private liability as distinguished from one of a public character.[49]

The appellees appear to concede that Doe, as someone whose criminal history records have been sealed as a result of pardons, is generally within the class of persons that § 29-3523 was enacted to protect. But they argue that under the third *Claypool* factor, there is nothing to suggest the Legislature intended § 29-3523 to create private tort liability. We agree.

[19,20] We have described the third *Claypool* factor as "central to the analysis of whether the statute defines a duty in

---

[49] *Claypool, supra* note 13, 261 Neb. at 825, 626 N.W.2d at 545.

tort,"[50] and we have explained that "where the Legislature has not by its express terms or by implication provided for civil tort liability [for failure to comply with a statute], under principles of judicial restraint, it is prudent that we not do so."[51] Moreover, we have said that courts should consider the express remedy, if any, imposed for violating the statute, and whether such a remedy is "inconsistent with a purported legislative intention to create a tort duty."[52]

The legislative purpose of the Criminal History Act is stated in § 29-3502:

> The purposes of [the Criminal History Act] are (1) to control and coordinate criminal offender record keeping within this state, (2) to establish more efficient and uniform systems of criminal offender record keeping, (3) to assure periodic audits of such record keeping in order to determine compliance with sections 29-209, 29-210, 29-3501 to 29-3528, and 81-1423, (4) to establish a more effective administrative structure for the protection of individual privacy in connection with such record keeping, and (5) to preserve the principle of the public's right to know of the official actions of criminal justice agencies.

It is apparent from the plain text of § 29-3502 that the purposes of the Criminal History Act are primarily administrative in nature; the act is aimed at ensuring uniformity, efficiency, accuracy, and transparency in criminal history recordkeeping. We see nothing in § 29-3502 which suggests the Legislature intended the Criminal History Act to create a tort duty to act in accordance with the statutory scheme.

Presumably recognizing that the legislative purpose recited in § 29-3502 is of little help to his argument under the *Claypool*

---

[50] *Stonacek v. City of Lincoln*, 279 Neb. 869, 880, 782 N.W.2d 900, 909 (2010).

[51] *Id.*

[52] *Id.* at 881, 782 N.W.2d at 910.

factors, Doe asks us to focus more specifically on the provisions of § 29-3523, which govern how sealed criminal history records are to be handled. But the plain language of § 29-3523 does not expressly or impliedly create private tort liability for failing to comply with the statutory provisions governing sealed criminal history records. In fact, as we discuss next, the Legislature has provided express statutory remedies for violations of the Criminal History Act which are inconsistent with a purported legislative intent to create a private tort duty.

We identify two statutes providing express remedies for violations of the Criminal History Act. Section 29-3527 establishes criminal liability for "[a]ny person" who commits certain violations of the Criminal History Act, including the knowing dissemination of "nondisclosable criminal history record information in violation of [the Criminal History Act]."[53] Additionally, § 29-3528 authorizes an aggrieved person to compel governmental actors to comply with the requirements of the Criminal History Act and provides:

> Whenever any officer or employee of the state, its agencies, or its political subdivisions, or whenever any state agency or any political subdivision or its agencies fails to comply with the requirements of [the Criminal History Act] or of regulations lawfully adopted to implement [the Criminal History Act], any person aggrieved may bring an action, including but not limited to an action for mandamus, to compel compliance and such action may be brought in the district court of any district in which the records involved are located or in the district court of Lancaster County. The commission may request the Attorney General to bring such action.

---

[53] See § 29-3527(1) through (3) (providing any person who permits unauthorized direct access to criminal history information, who knowingly fails to disseminate public criminal history information, or who knowingly disseminates "nondisclosable criminal history record information" is guilty of Class IV misdemeanor).

Based on the express statutory remedies created by the Legislature—one which imposes criminal penalties on any person who violates the act, and another which authorizes mandamus and similar actions against governmental actors "to compel compliance" with the act—we cannot find that the Legislature intended the Criminal History Act generally, or § 29-3523 specifically, to give rise to any tort duty, let alone a duty that would apply to a private person.[54]

[21] We thus reject Doe's argument and hold that § 29-3523 does not give rise to a legal duty that would subject a private person to civil tort liability for failing to act in the manner prescribed by statute. But that does not end our analysis.

Although Doe's complaint identifies § 29-3523 as the primary source of the alleged duty not to disclose or consider his sealed criminal history records, he also argues that if the statute does not give rise to a tort duty, then Nebraska recognizes a common-law duty of reasonable care not to disclose criminal history records. The district court rejected this argument, reasoning that Doe had provided "no authority for a common law duty prohibiting the dissemination of truthful information about a person's criminal history" and concluding that "no such duty exists."

Doe has not assigned error to this aspect of the trial court's duty ruling. But in his supplemental briefing, he argues that Nebraska common law provides a private analogue for the negligence claims he alleged against the State. We consider this argument next, and find it lacks merit.

### (ii) Would Private Person Owe Common-Law Duty Under Like Circumstances?

Doe argues that Nebraska law recognizes what he describes as a common-law "duty to act with reasonable care when in custody of sealed or sensitive information, the disclosure of

---

[54] See *Smith, supra* note 42, 14 F.4th at 1232 (holding FTCA "does not cover breaches of federal statutory or regulatory duties that do not apply to private parties").

which would have a detrimental effect on the life and livelihood of an individual."[55] He directs us to no Nebraska case recognizing such a common-law duty, and we find none.

Instead, Doe refers us to a case from 1994, *Merrick v Thomas*,[56] which he argues recognized a general common-law duty of reasonable care. In that case, the plaintiff sued the sheriff under the Political Subdivisions Tort Claims Act, alleging that the sheriff had a duty to score her admissions test accurately and fairly and that he had breached that duty. This court concluded the plaintiff's complaint, liberally construed, alleged sufficient facts to establish the sheriff "owed her a duty to score her test with due care."[57] In reaching this conclusion, the *Merrick* court recited the general proposition that "[a] common-law duty exists to use due care so as not to negligently injure another person."[58] Doe relies on this statement in *Merrick* to argue that under Nebraska law, a private person owes a general common-law duty of reasonable care to others. But our more recent cases expressly disavow the suggestion that Nebraska recognizes "a general duty of reasonable care to all others at all times."[59] Instead, since our 2010 decision in *A.W. v. Lancaster Cty. Sch. Dist. 0001*,[60] Nebraska has consistently followed the general duty framework set out in § 7 of the Restatement (Third) of Torts.[61] The duty principles recited in *Merrick* do not reflect current tort law in Nebraska.

---

[55] Brief for appellant at 22.

[56] *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994).

[57] *Id.* at 662, 522 N.W.2d at 406.

[58] *Id.* at 661, 522 N.W.2d at 406.

[59] *Bell v. Grow With Me Childcare & Preschool*, 299 Neb. 136, 154, 907 N.W.2d 705, 718 (2018).

[60] *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010).

[61] See *Bell, supra* note 59 (discussing 1 Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7 (2010)).

[22] We thus reject Doe's suggestion that Nebraska's common-law recognizes a duty not to disclose sealed criminal history information. Indeed, if such a common-law duty did exist, it seems unlikely the Legislature would have amended the Criminal History Act in 2019 to enact laws prohibiting the dissemination of sealed criminal history record information under certain circumstances.

### (iii) No Private Analogue

For the above reasons, we conclude that Doe has failed to establish that a private person would owe him a legal duty under circumstances like those alleged in his complaint. Without a legal duty, a private person could not be liable in negligence under like circumstances. Stated differently, there is no "private analogue" for his claim, and Doe has thus failed to allege a tort claim under § 81-8,210(4) for which the State has waived its sovereign immunity.

For the sake of completeness, however, we note that Doe's appellate briefing also argues that even if there is not a private person analogue for his negligence claim under § 29-3523 or Nebraska's common law, there are other possible tort claims, such as invasion of privacy or "Interference with Economic Expectation,"[62] for which a private person may be liable. We do not address these arguments, however, because Doe neither pled such tort claims nor alleged conduct that would plausibly support such tort claims. Instead, Doe's complaint alleged a negligence claim premised exclusively on conduct which he says failed to comply with § 29-3523, and we have already explained why no private analogue exists for that claim.

### 2. DOE'S REMAINING ASSIGNMENTS AND ARGUMENTS

[23] Our conclusion that Doe has not alleged a tort claim under the STCA for which the State has waived its sovereign immunity makes it unnecessary to address any of his remaining assignments of error. An appellate court is not obligated

---

[62] Brief for appellant at 19.

to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[63]

Similarly, we do not address Doe's argument, raised for the first time in his reply brief, that even if the STCA's limited waiver of sovereign immunity does not apply to his claims, the district court should have construed his tort action as one to enforce compliance with the Criminal History Act under § 29-3528. Doe has not assigned this as error on appeal,[64] nor could he. His complaint relied exclusively on the STCA for jurisdiction over his tort claim. The complaint neither referenced § 29-3528 nor alleged it as a possible jurisdictional basis. The district court did not consider Doe's unpled jurisdictional theory, and we will not consider it for the first time on appeal.[65]

## V. CONCLUSION

Because Doe has not shown that a private person would be liable under Nebraska law for the allegedly tortious conduct alleged in the complaint, the STCA's limited waiver of sovereign immunity does not apply. The district court therefore correctly concluded that Doe has not alleged a "tort claim" under the STCA for which the State has waived its sovereign immunity. The district court's dismissal of the complaint for lack of subject matter jurisdiction was correct and is affirmed.

Affirmed.

---

[63] *Schmid v. Simmons*, 311 Neb. 48, 970 N.W.2d 735 (2022).

[64] See *Adair Holdings v. Johnson*, 304 Neb. 720, 936 N.W.2d 517 (2020) (alleged error must be both assigned and argued to be addressed by appellate court).

[65] See *Wisner v. Vandelay Investments*, 300 Neb. 825, 841, 916 N.W.2d 698, 714 (2018) ("[a]n argument not presented to or decided by the trial court is not appropriate for consideration on appeal").

Cassel, J., concurring.

Our dissenting colleague relies upon a "broad interpretation" endorsed by the U.S. Supreme Court in determining the reach of the private person analogue in the Federal Tort Claims Act

addressing liability of the national sovereign. But, as the majority opinion makes clear, Nebraska adheres to strict construction of waivers of sovereign immunity as to the state sovereign. Thus, a "broad interpretation" is inconsistent with Nebraska law. And because the district court's subject matter jurisdiction depended upon a waiver of sovereign immunity, this court was not free to avoid the jurisdictional analysis. Judicial restraint does not permit or justify judicial abdication.

Miller-Lerman, J., concurring in part, and in part dissenting.

I respectfully concur in part, and in part dissent. I agree with the majority that, given the remedies in the Security, Privacy, and Dissemination of Criminal History Act (Act), Neb. Rev. Stat. §§ 29-209, 29-210, 29-3501 to 29-3538, and 81-1423 (Reissue 2016 & Cum. Supp. 2020), the responsibilities of the Act do not create the duty element of the tort of negligence and that therefore, Doe has failed to state a claim for negligence under Neb. Rev. Stat. § 81-8,210(4) (Reissue 2014) of the State Tort Claims Act (STCA). But STCA permits "tort claims" in addition to the tort claim of negligence. Other actions which lie in tort can be brought, such as interference with a business expectancy, which may be applicable here based on the events giving rise to the complaint. Doe should be permitted to amend. Further, albeit recast by the majority as a failure of the State to waive immunity, the majority affirmed the district court's order, which concluded that there was a failure of subject matter jurisdiction. Not every failing is a jurisdictional defect. I dissent from these rulings. I see the case as a simple matter of failure to state a claim for negligence, and the district court should permit Doe leave to attempt to replead another tort.

The alleged facts are not repeated here. In summary, Doe alleged that notwithstanding the fact that Doe's criminal record was sealed under § 29-3523(5), and after Doe's job interview, the Nebraska State Patrol improperly transmitted the records identified as "Sealed Info" to the Department of Correctional Services and its director, Scott Frakes, in connection with

Doe's application for employment. Frakes acknowledged that the department should not have considered Doe's sealed record in connection with its rejection of Doe's job application. Doe alleged negligence under STCA.

According to the Act, among the objectives of sealing criminal records is "the protection of individual privacy." See § 29-3502. Following a pardon, and sealing of a person's records, the aim of the Act is to keep records private and protect the pardoned individual from harm due to improper dissemination and reliance on the sealed criminal record. The statutory remedies for failure to abide by the Act are provided by §§ 29-3527 and 29-3528 and include criminal liability and mandamus. See *State ex rel. Rhiley v. Nebraska State Patrol*, 301 Neb. 241, 917 N.W.2d 903 (2018) (stating sovereign immunity does not bar mandamus under § 29-3528 against public officer). Because the Legislature has already provided explicit remedies to enforce the Act, it would be inconsistent for the court to create a separate private cause of action for negligence, based on a breach of the responsibilities described in the Act. This conclusion is similar to this court's analysis in *Stonacek v. City of Lincoln*, 279 Neb. 869, 782 N.W.2d 900 (2010). By this reasoning, I concur with the majority's conclusion that the Act does not create a duty in negligence or a cause of action for negligence.

At this point, the analysis of whether Doe alleged a cause of action for negligence under STCA is complete, and in my view, the majority's analysis of the private person analogue and its segue into sovereign immunity are unnecessary and not consistent with the widespread jurisprudence in this area. In my view, firstly, the analysis improperly casts the issue as jurisdictional, and secondly, the majority misreads the federal jurisprudence as requiring a too exacting private equivalence instead of an analogue.

I see a pleading failure, but unlike the majority, I do not see a jurisdictional failure. There is no dispute that the district court has subject matter jurisdiction to entertain an STCA

action. Just because Doe did not allege a viable negligence "[t]ort claim," see § 81-8,210(4), for the particular tort of negligence does not bar him from attempting to plead another tort under STCA. In my view, the defect in the complaint identified by the trial court and this appellate court is not incurable as a matter of law. As I have observed in the past, not every failing is jurisdictional and we should be careful with our invocation of the concept of jurisdiction. *State v. Crawford*, 291 Neb. 362, 865 N.W.2d 360 (2015), *disapproved on other grounds, State v. Burries*, 310 Neb. 688, 969 N.W.2d 96 (2022). See *State v. Ryan*, 287 Neb. 938, 845 N.W.2d 287 (2014), *disapproved on other grounds, State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018). See, also, *Akutowicz v. U.S.*, 859 F.2d 1122 (2d Cir. 1988) (holding that where plaintiff has not satisfied private analogue requirement, plaintiff has failed to state cause of action under Federal Tort Claims Act). But see *Geico General Ins. Co. v. U.S.*, 581 F. Supp. 3d 847 (E.D. Ky. 2022) (stating because plaintiff failed to plead analogue facts sufficient to state plausible claim under Federal Tort Claims Act, court lacked jurisdiction). In my view, we should not recast an inartful pleading as a jurisdictional defect merely to provide a vehicle to dismiss. I dissent from this approach of the majority opinion.

As I have urged, discussion of the doctrine of a private person analogue is not necessary to the disposition of this case, and I would exercise judicial restraint in this regard. Just because the court can write about private person analogue does not mean it should. To the extent dicta by the majority considers the private person analogue, I disagree with the majority's analysis that the analogue must be so precise.

As the majority notes, STCA is patterned after the Federal Tort Claims Act (hereinafter FTCA), see 28 U.S.C. § 2680(h) (2018), which to some extent, we follow. Compare *Moser v. State*, 307 Neb. 18, 948 N.W.2d 194 (2020). FTCA's private person analogue is found at 28 U.S.C. § 1346 (2018).

Nebraska's private person analogue is found at § 81-8,210(4), which provides:

> Tort claim means any claim against the State of Nebraska for money only on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the state, while acting within the scope of his or her office or employment, under circumstances in which the state, if a private person, would be liable to the claimant for such damage, loss, injury, or death . . . .

> In evaluating whether a private person analogue exists for the plaintiff's federal tort claim, the U.S. Supreme Court has stated that the State is not immune from suit solely because it was engaged in a uniquely governmental function. See, *United States v. Olson*, 546 U.S. 43, 126 S. Ct. 510, 163 L. Ed. 2d 306 (2005); *Rayonier, Inc. v. United States*, 352 U.S. 315, 77 S. Ct. 374, 1 L. Ed. 2d 354 (1957); *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S. Ct. 122, 100 L. Ed. 48 (1955). A court applying the private person standard is not restricted to "narrow" inquiries into the *same circumstances*, but must look further afield. *United States v. Olson*, 546 U.S. at 46.

The U.S. Supreme Court declared that it "would be attributing bizarre motives to Congress . . . to hold that it was predicating liability on such a completely fortuitous circumstance— the presence or absence of identical private activity." *Indian Towing Co. v. United States*, 350 U.S. at 67. The U.S. Supreme Court found no evidence in FTCA that Congress "intended to draw distinctions so finespun and capricious as to be almost inescapable of being held in the mind for adequate formulation." *Indian Towing Co. v. United States*, 350 U.S. at 68.

It has been observed that FTCA's private person analogue provision, § 1346, has been given

> generous development by the Supreme Court. [FTCA] is given a broad interpretation to effectuate the legislative aim of putting citizen and national sovereign in tort

claims suits on a footing of equality as between private parties within that state. Nice pieces of casuistry and hypersensitive legalisms are avoided.

*Roelofs v. United States*, 501 F.2d 87, 92 (5th Cir. 1974). These authorities illustrate why the majority has too narrowly applied the private person analogue and why I dissent from such narrow understanding in this and future cases.

Turning to the complaint, Doe alleged a violation of the responsibilities outlined in the Act by the State Patrol, Frakes, and the Department of Correctional Services. According to the allegations, Doe suffered the financial harm of being rejected for a job as a result of state actors' wrongful conducts, i.e., by both the improper dissemination of his sealed record and the subsequent knowing reliance on the sealed record. I read the events giving rise to the complaint as potentially involving tortious interference with Doe's business expectancy or another tort. See *Denali Real Estate v. Denali Custom Builders*, 302 Neb. 984, 926 N.W.2d 610 (2019) (setting forth elements of interference with business relationship or expectancy). Employing the "broad interpretation" of the private person analogue endorsed by the federal courts, see *Roelofs v. United States*, 501 F.2d at 92, Doe has alleged a "[t]ort claim" on account of the "wrongful act or omission of any employee of the state, while acting within the scope of his or her office or employment, under circumstances in which the state, if a private person, would be liable to the claimant for such damage, loss, injury or death . . . ." § 81-8,210(4). So, although I think it unnecessary to engage in the private person analogue exercise, were I to do so, I would find that Doe had alleged facts which may indicate the existence of the private analogue tort of interference with a business expectancy and thus should be permitted to amend his pleading to attempt to make such "tort claim" more explicit.

For the foregoing reasons, I concur in part, and in part dissent.